## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

| | | |
|---|---|---|
| John Lamont McKinnon, | ) | |
|     Petitioner, | ) | |
| | ) | |
| v. | ) | **1:21cv846 (AJT/IDD)** |
| | ) | |
| Harold Clarke, | ) | |
|     Respondents. | ) | |

### <u>MEMORANDUM OPINION</u>

John Lamont McKinnon ("Petitioner" or "McKinnon"), a Virginia inmate proceeding <u>pro se</u>, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging the validity of his November 22, 2019 convictions in the Circuit Court for the City of Newport News, Virginia for one count of malicious wounding and one count of use of a firearm in commission of a felony; and for his February 5, 2020 conviction for one count of possession of ammunition by a convicted felon. On February 28, 2022, the Respondent filed a Rule 5 Answer and a Motion to Dismiss, with supporting briefs and exhibits. Petitioner has exercised his right to file responsive materials to the motion to dismiss pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975) and Local Rule 7(K). [Dkt. Nos. 23-25]. Accordingly, this matter is now ripe for disposition. For the reasons that follow, the respondent's Motion to Dismiss must be granted and the petition will be dismissed with prejudice.

### I. Background

Following a two-day jury trial on September 24-25, 2019, McKinnon was convicted of one count of malicious wounding, in violation of Virginia Code § 18.2-51, and one count of use of a firearm in commission of a felony, in violation of Virginia Code § 18.2-53.1. (Case Nos. 00646-19 and 00647-19). On February 5, 2020, McKinnon, pursuant to a written plea agreement,

pleaded guilty to one count of possession of ammunition by a convicted felon, in violation of Virginia Code § 18.2-308.2, and sentenced to five years in prison, with three years suspended. (Case No. 00308-19). By order dated November 22, 2019, the trial court sentenced McKinnon to ten years in prison for malicious wounding and one year in prison for possession of a firearm by a convicted felon. McKinnon represented himself at trial, and the trial court appointed an attorney, Joshua Goff, as his stand-by counsel. After his convictions, the trial appointed Goff to represent McKinnon on appeal.

McKinnon appealed from his malicious wounding and use of a firearm convictions to the Court of Appeals of Virginia, asserting that the trial court erred by refusing to instruct the jury on self-defense. On June 15, 2020, the court affirmed his convictions. (Record No. 1936-19-1). The denial order summarized the relevant facts as follows:

> In August 2018, Taniqua Williams visited her sister in Newport News. Williams sat on her sister's porch with [McKinnon], T.J. Howard, and Charles Reed. [McKinnon] asked Reed if he could "hit [Reed's] blunt" of marijuana. Reed declined but [McKinnon] "kept running off at his mouth" and arguing with Reed. Although the argument between [McKinnon] and Reed was not initially "physical" and neither man "put [his] hands" on the other, Williams retreated inside the house when [McKinnon] produced a handgun. After hearing "two or three" gunshots, Williams returned to the porch and saw Reed lying on the ground with "blood on his side."
>
> Reed testified that after arguing with [McKinnon] about marijuana, [McKinnon] "tried to hit" his face with a handgun. Reed had not "laid [his] hands" on [McKinnon], but he grabbed [McKinnon's] wrist because he was "not going to let [McKinnon] hit [him] with a pistol." Howard saw [McKinnon] shoot Reed "more than once" "during the struggle." The first bullet "got stuck in [Reed's] neck" and had to be "surgically removed." The second bullet struck Reed's side. [McKinnon] fled after shooting Reed. Howard pursued [McKinnon] and called 9-1-1.
>
> Newport News Police Officer C. Fundak responded to scene and saw [McKinnon] running down the street with a handgun in his hand. Fundak briefly lost sight of [McKinnon] as he fled "down [a] driveway" but detained him "[a]bout two houses" further down the street. [McKinnon] did not have a handgun when Fundak detained him, but Fundak found a bag of ammunition in his pocket. Tony Liggins lived on the street where [McKinnon] had been running. A few days later, Liggins found a revolver in his yard that did not belong to him. The revolver was

loaded with six bullets, two of which had "been fired." The ammunition found in [McKinnon's] pocket matched the caliber of the revolver found in Liggins's yard.

(CAV R. at 44-45).

McKinnon appealed the jury instruction issue to the Supreme Court of Virginia, which refused his petition for appeal by order entered April 26, 2021. (Record No. 200813). McKinnon admits he did not seek further post-conviction relief in state court. [Dkt. No. 1 at 3].

On June 15, 2021, McKinnon filed his current federal habeas petition [Dkt. No. 1 at 15], and asserted the following grounds:

I. McKinnon alleges he was denied his due process rights and that his conviction is void because the indictments against him were "fatally defective," and that his appellate counsel was ineffective for failing to raise the issue on appeal.

II. McKinnon alleges he was denied due process rights because the trial court was biased against him and abused its discretion and that his appellate counsel was ineffective for failing not raising the issue on appeal.

III. McKinnon alleges he was denied the effective assistance of counsel when counsel failed to bring a CD containing footage from a police officer's body-worn camera and a laptop to jail so that petitioner could review the footage.

IV. McKinnon alleges his Double Jeopardy rights were violated and that his appellate counsel was ineffective for not raising the issue on appeal.

V. McKinnon alleges he was denied his due process rights when the trial court refused to instruct the jury on self-defense.

[Id. at 5-12, 16-31].

## II. Exhaustion

Before filing a federal habeas petition a state prisoners must first exhaust their claims in the appropriate state court. Failure to exhaust all claims requires dismissal of the petition to allow the petitioner to exhaust his claims in the appropriate state courts. See 28 U.S.C. § 2254(b); Granberry v Greer, 481 U.S. 129, 134 (1987). To comply with the exhaustion requirement, a state prisoner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan

3

v. Boerckel, 526 U.S. 838, 845 (1999). To exhaust in Virginia, a petitioner must first have presented the same factual and legal claims raised in his federal action to the Supreme Court of Virginia on direct appeal, or in a state habeas corpus petition. See, e.g., Duncan v. Henry, 513 U.S. 364, 365 (1995).

Exhaustion is a matter of comity to the state courts, and failure to exhaust requires dismissal from federal court so that a petitioner may present his claims to the state courts. See Rose v. Lundy, 455 U.S. 509, 515-19 (1982). Generally, a federal habeas petition containing unexhausted claims will be dismissed without prejudice to allow for further state court review. Id. at 522. If state law, however, would bar further state court review, then federal habeas review of the unexhausted claim is procedurally barred. See Burket v. Angelone, 208 F.3d 172, 183 n.11 (4th Cir. 2000) ("a procedural default occurs when the petitioner fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'") (quoting Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991)).

In the present case, the only assertion of error in the Supreme Court of Virginia is as follows: "The Court of Appeals erred in affirming the trial court's refusal to instruct the jury on self-defense, where the evidence adduced at trial offered more than a scintilla of evidence to support McKinnon was acting in self-defense after he and Reed began a physical altercation." (VSCT R. at 8) (citing Tr. at 192-202). The only claim in the federal petition that has any resemblance to the alleged error raised on direct appeal is Claim V, the remaining four claims are unexhausted.

Petitioner argues his Claim V, alleging he was denied his due process rights when the trial court refused to instruct the jury on self-defense, was raised on direct appeal because his

petition for appeal cited <u>Ornelas v. United States</u>, 517 U.S. 690 (1996). The portion of the petition for appeal he relies upon is in the "Standard of Review" section of the petition for appeal, and states as follows:

> "We are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them, and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." <u>McGee v. Commonwealth</u>, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc) (citing <u>Ornelas v. United States</u>, 517 U.S. 690, 699 (1996)). However, we review de novo the trial court's application of defined legal standards … to the particular facts of the case. <u>See Ornelas</u>, 517 U.S. at 699; <u>Hayes v. Commonwealth</u>, 29 Va. App. 647, 652, 514 S.E.2d 357, 359 (1999); <u>Shears v. Commonwealth</u>, 23 Va. App. 394. 398, 477 S.E.2d 309, 311 91996).

(VSCT R. at 9). The preceding paragraph in the same section of the petition for appeal states as follows: "'We review a trial court's decision to refuse a jury instruction for abuse of discretion.' <u>King v. Commonwealth</u>, 64 Va. App. 580, 586, 770 S.E.2d 214, 217 (2015) (en banc)." (<u>Id.</u>).

A plain reading of the full text of the entire portion of the petition for appeal upon which McKinnon relies indicates that the reference to <u>Ornelas</u> was simply an additional case cited in support of the standard for review applicable to the court's review of the facts in the record on appeal. Indeed, <u>Ornelas</u> concerned review of a Fourth Amendment issue and did not address either a due process issue or jury instructions.[1] Claim V is therefore also not exhausted, which means that Claim V may nevertheless "be treated as exhausted if it is clear that the claim would be procedurally barred under state law if the petitioner attempted to present it to the state court." <u>Baker v. Corcoran</u>, 220 F.3d 276, 288 (4th Cir. 2000) (citing <u>Gray v. Netherland</u>, 518 U.S. 152, 161 (1996)),

---

[1] <u>Ornelas</u>  concerned the standard of review for a district court's determination of reasonable suspicion or probable cause. <u>Ornelas</u> held "that as a general matter determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal. Having said this, we hasten to point out that a reviewing court should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." 517 U.S. at 699.

The non-ineffective assistance of counsel allegations in petitioner's Claims I through V concern matters that could have been raised on direct appeal, and therefore if petitioner attempted to raise them now in a state habeas petition, each would be found to be barred under the rule of Slayton v. Parrigan. The Fourth Circuit has held consistently that "the procedural default rule set forth in Slayton constitutes an adequate and independent state law ground for decision." Mu'Min v. Pruett, 125 F.3d 192, 196-97 (4th Cir. 1997).

The ineffective assistance of counsel allegations in Claims I through IV, suffer the same fate. Claims of ineffective assistance of counsel in Virginia must be presented by way of a state habeas petition. If the petitioner attempted to raise the ineffective assistance of counsel claims via a state habeas petition now, the claims would be barred by the state habeas statute of limitations. See Va. Code §§ 8.01-654(A)(2); see also Bassett, 915 F.2d at 936-37 (an unexhausted claim, which would be held defaulted if the petitioner were to return to state court, is deemed simultaneously exhausted and defaulted for purposes of federal habeas review).[2] Virginia's habeas statute of limitations is an independent and adequate state procedural rule that bars federal review. See Walker v. Martin, 562 U.S. 307, 321 (2011) (state statutes of limitations may be an independent and adequate state law ground barring federal habeas review); Sparrow v. Dir., Dep't of Corr., 439 F. Supp. 2d 584, 587-88 (E.D. Va. 2006) (finding federal habeas claims simultaneously exhausted and defaulted because the claims not presented in state court would now be time barred by adequate and independent default of Virginia Code § 8.01-654(A)(2)).

Even if a claim has been defaulted, however, a federal court may review it if the

---

[2] Section 8.01-654(A)(2) provides that a state "habeas corpus petition attacking a criminal conviction or sentence shall be filed within two years from the date of final judgment in the trial court or within one year from either final disposition of the direct appeal in state court or the time for filing such appeal has expired, whichever is later." The final judgment orders were entered on November 25, 2019 and April 1, 2020. The direct appeal concluded on April 26, 2021. The time to pursue state relief has expired.

petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged

violation of federal law" or a fundamental miscarriage of justice. See Vinson v. True, 436 F.3d

412, 417 (4th Cir. 2005). "'[C]ause' under the cause and prejudice test must be something

external to the petitioner, something that cannot fairly be attributed to him ...." Coleman, 501

U.S. at 753 (citation omitted). To establish cause, a petitioner must "show that some objective

factor external to the defense impeded [his] efforts to comply with the State's procedural rule."

Murray v. Carrier, 477 U.S. 478, 488 (1986). To show "prejudice," a petitioner must show an

alleged constitutional violation worked to his "actual and substantial disadvantage, infecting his

entire trial with error of constitutional dimensions." United States v. Frady, 456 U.S. 152, 170

(1982) (emphasis removed). A court need not consider the issue of prejudice in the absence of

cause. See Kornahrens v. Evatt, 66 F.3d 1350, 1359 (4th Cir. 1995).

In his reply to the motion to dismiss, McKinnon argues that his claims are properly

before the Court because his allegation that appellate counsel was ineffective serves as cause to

excuse his default. [Dkt. No. 25 at 2, 3] (citing Martinez v. Ryan, 566 U.S. 1, 13-15 (2012)). In

Claims I, II, and IV petitioner alleges ineffective assistance of appellate counsel, and in Claim

III, petitioner alleges ineffective assistance of standby counsel.

> In some circumstances, ineffective assistance of counsel may be sufficient
> "cause" for a defaulted claim. See Edwards [v. Carpenter, 529 U.S. 446, 451
> (2000)]; Slavek v. Hinkle, 359 F. Supp. 2d 473, 480 (E.D. Va. 2005). Importantly,
> where a petitioner for federal habeas relief seeks review of claims defaulted
> during state habeas proceedings, he must show that he raised the ineffectiveness
> argument as a cause for the defaulted substantive claims during his state habeas
> proceedings. If a petitioner did not raise the ineffectiveness claim at the state
> habeas level, a federal habeas court may not consider it. Edwards, 529 U.S. at
> 452-53.

Powell v. Kelly, 531 F. Supp. 2d 695, 723 (E.D. Va. 2008), aff'd, 562 F.3d 656 (4th Cir. 2009)

(emphasis added). Because petitioner did not exhaust his allegations of ineffective assistance of

counsel in state court, the ineffective assistance of counsel claims cannot be considered as a

cause under <u>Edwards</u> to review the substantive claims.

Petitioner's reliance on <u>Martinez</u> does not excuse his defaults. <u>Martinez</u>, however, is inapplicable to Claims I through IV because it created a "narrow exception," for review of defaulted claims of ineffective assistance of *trial counsel*. 566 U.S. at 9. If "under state law, claims of ineffective assistance of *trial counsel* must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance *at trial* if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." <u>Id.</u> at 17 (emphasis added). <u>Martinez</u> is inapplicable to petitioner's claims because he seeks to have his claims of ineffective assistance of appellate counsel or standby-counsel, not trial counsel, reviewed.[3] <u>See</u> <u>Davilla v. Davis</u>, 137 S. Ct. 2058, 2063 (2017) (declining to extend the holding of <u>Martinez</u> to defaulted claims of ineffective assistance of appellate counsel); <u>Banks v. Workman</u>, 692 F.3d 1133, 1148 (10th Cir. 2012) ("<u>Martinez</u> applies only to 'a prisoner's procedural default of a claim of ineffective assistance at trial,' not to claims of deficient performance by appellate counsel.") (quoting <u>Martinez</u>, 566 U.S. at 8)); <u>Gaither v. Zook</u>, No. 3:16cv64, 2017 U.S. Dist. LEXIS 20596, *9-10 (E.D. Va. Jan. 18, 2017) ("The majority of federal circuit courts have found that the explicit language of <u>Martinez</u> apples to a prisoner's default of a claim of ineffective assistance of trial counsel only.") (citing decisions from the Fifth, Sixth, Eighth, Tenth, Eleventh); <u>see, e.g.</u>, <u>Moseley v. Clarke</u>, 3:19cv40, 2019 U.S. Dist. LEXIS 152405, *33 (E.D. Va. Sept. 5, 2019) ("To the extent that Moseley faults appellate counsel for the default of his claim, the explicit language of <u>Martinez</u> applies to an inmate's default of a claim of ineffective assistance of trial counsel

---

[3] Petitioner represented himself at trial. <u>See</u> <u>United States v. Windsor</u>, 981 F.2d 943, 947 (7th Cir. 1992) (rejecting the *pro se* defendant's assertion that standby counsel was ineffective, finding that a "defendant who has elected to represent himself 'cannot thereafter complain that the quality of his own defense amounted to a denial of effective assistance of counsel.'") (quoting <u>Faretta v. California</u>, 422 U.S. 806, 834-35 n.46 (1975)).

only …. Thus, the ineffective assistance of appellate counsel fails to serve as the cause for the default of this claim.") (citation omitted), appealed dismissed, 791 F. App'x 428 (4th Cir.), cert. denied, 141 S. Ct. 301 (2020).

Finally, the Supreme Court made clear that while Martinez applies to initial-review collateral proceedings, it "does not concern attorney errors in other kinds of proceedings." Id. at 16 (citation omitted). Thus, Martinez is inapplicable here because McKinnon never pursued state habeas relief. See Jones v. Pa. Bd. of Prob. & Parole, 492 F. App'x 242, 246-47 (3d Cir. 2012) (holding that the "Martinez analysis is inapplicable where the criminal defendant did not initiate any state collateral review proceeding whatsoever"); Pullen v. Dir., Va. Dep't of Corr., No. 7:14cv211, 2015 U.S. Dist. LEXIS 3445, at *6 (W.D. Va. Jan. 13. 2015) (citing Jones and explaining that because petitioner "did not initiate a state habeas proceeding .... he cannot benefit from the Martinez exception to default of his claims that trial counsel was ineffective"), appeal dismissed, 604 F. App'x 284 (4th Cir. 2015).

All of petitioner's claims are defaulted, he has failed to establish cause to excuse the defaults, and the claims will be dismissed.

### III. Merits

In addition to being defaulted, petitioner's claims have no merit. The substantive portions of the claims involve matters of state law, and the ineffective assistance of counsel portions fail to satisfy the two-prong test for ineffective assistance of counsel established in Strickland v. Washington, 466 U.S. 668 (1984).

Under Strickland, the petitioner has the burden to show both that his attorney's performance was deficient and that he was prejudiced as a result. Id. at 687. In determining whether counsel's performance was deficient "judicial scrutiny of counsel's performance must

be highly deferential." Id. at 688. Accordingly, "a (habeas) court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. "The essence of an ineffective assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict suspect." Kimmelman v. Morrison, 477 U.S. 365, 374 (1986). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690; see also Burket v. Angelone, 208 F.3d 172, 189 (4th Cir. 2000) (a reviewing court "must be highly deferential in scrutinizing [counsel's] performance and must filter the distorting effects of hindsight from [its] analysis").

The first prong of the Strickland test, the "performance" inquiry, "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." 466 U.S. at 687. The second prong of the Strickland test, the "prejudice" inquiry, requires showing that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." Id. In addition, an ineffective counsel claim may be disposed of on either prong because deficient performance and prejudice are "separate and distinct elements." Spencer v. Murray, 18 F.3d 229, 232-33 (4th Cir. 1994); Strickland, 466 U.S. at 697.

"Th[e] right to effective assistance of counsel extends to require such assistance on direct appeal of a criminal conviction." Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir. 2000) (en banc) (applying Strickland to claims of ineffective assistance of counsel during appellate proceedings). "In deciding which issues to raise on appeal, [counsel] is entitled to the presumption that he

10

decided which issues were most likely to afford relief." Pruett v. Thompson, 996 F.2d 1560, 1568 (4th Cir. 1993). "Effective assistance of appellate counsel does not require the presentation of all issues on appeal that may have merit." Lawrence v. Branker, 517 F.3d 700, 709 (4th Cir. 2008). Indeed, the "process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." Smith v. Murray, 477 U.S. 527, 536 (1986) (internal quotations and citations omitted). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1986). "The ineffective assistance inquiry therefore requires a court to compare the strength of an issue not raised on direct appeal ... with the strength of arguments that were raised." United States v. Allmendinger, 894 F.3d 121, 126 (4th Cir. 2018). In conducting that comparison, the court "focus[es] on the reasonableness of appellate counsel's conduct viewed as of the time of the conduct." Id. (citing Strickland, 466 U.S. at 690).

   *A. Claim I*

   In Claim I, McKinnon alleges he was denied due process rights and that his conviction is void because the indictments against him were "fatally defective," and that his appellate counsel was ineffective for failing to argue on appeal that the indictments were "fatally defective." However, Claim I does not allege a fatally defective indictment, which is fatal to both parts of Claim I.

   "[T]he Due Process Clause guarantees [a defendant] the 'right to reasonable notice of a charge against him, and an opportunity to be heard [in] his defense ....'" Barbe v. McBride, 477 F. App'x 49, 51 (4th Cir. 2012) (quoting In re Oliver, 333 U.S. 257, 273 (1948)). An indictment satisfies these constitutional requirements if it "contains the elements of the offense charged and

11

fairly informs a defendant of the charge against which he must defend, ... enab[ing] him to plead an acquittal or conviction in bar of future prosecutions for the same offense." Hamling v. United States, 418 U.S. 87, 117 (1974); see also Branzburg v. Hayes, 408 U.S. 665, 688 n. 25 (1972) (noting that the "grand jury is not part of the due process of law guaranteed to state criminal defendants by the Fourteenth Amendment") (citing Hurtado v. California, 110 U.S. 516 (1884)).[4] Virginia Code § 19.2-220 sets forth the required contents of an indictment.

> The indictment or information shall be a plain, concise and definite written statement, (1) naming the accused, (2) describing the offense charged, (3) identifying the county, city or town in which the accused committed the offense, and (4) reciting that the accused committed the offense on or about a certain date. In describing the offense, the indictment or information may use the name given to the offense by the common law, or the indictment or information may state so much of the common law or statutory definition of the offense as is sufficient to advise what offense is charged.

Petitioner argues that the docket numbers on the indictments — 1900308, 1900646, 1900647 — are not the correct numbers because the docket numbers on his capias were:19000308, 19000646, and 19000647. [Dkt. No. 1-1 at 4]. Petitioner characterizes this "discrepancy" as a fatal variance. In Virginia, however, "a variance will be deemed fatal 'only when the proof is different from and irrelevant to the crime defined in the indictment and is, therefore, insufficient to prove the commission of the crime charged,'" Purvy v. Commonwealth, 717 S.E.2d 847, 850 (Va. Ct. App. 2011) (citation omitted), and matters of form do not provide a

---

[4] McKinnon also makes references to the Virginia requirement that an indictment be returned in open court. The requirement, however, even if not met, does not state a federal claim. Moreover, this Court has previously noted that

> in Virginia, the requirement for proceeding by indictment is statutory and the Supreme Court of Virginia has addressed the very alleged defect that Lewis raised in his motion to vacate and held that "the statutory requirement for an indictment... is not jurisdictional, the failure of the record to show affirmatively that the indictment was returned into court by the grand jury is not such a defect as will render null and void the judgment of conviction based thereon." Epps v. Commonwealth, 293 Va. 403, 409, 799 S.E.2d 516 (2017) (quoting Hanson v. Smyth, 183 Va. 384, 390-91, 32 S.E.2d 142 (1944)).

Lewis v. Clarke, No. 1:20cv282, 2020 U.S. Dist. LEXIS 194530, *18-19 (E.D. Va. Oct. 19, 2020), appeal dismissed, 853 F. App'x 914, 915 (4th Cir. 2021).

basis for "dismissal of an indictment or reversal of a conviction." Id. (citation omitted). The docket number is part of the caption of a case and not part of the "charge against which the defendant must defend," and is simply a means for the clerk to track and file pleadings related to a case. See Stillman v. United States, 177 F.2d 607, 611 (9th Cir. 1949) (erroneous recitals in the caption of an indictment do not vitiate an indictment). State and federal trial courts have thousands of cases pending at any particular time, as wells as thousands more that have been closed. Assigning docket numbers is a means of facilitating filing pleadings and retrieving files when needed. Even if the indictments in petitioner's case had an additional "zero" inserted into the docket number, the indictments in his cases satisfied the requirements of § 19.2-220 and due process.

The claim that appellate counsel is alleged to be ineffective for not presenting on appeal a claim that is clearly "weaker" than the claim counsel raised because the substantive portion of Claim I is without merit. Counsel was not ineffective for failing to raise a meritless issue. See Moody v. Polk, 408 F.3d 141, 151 (4th Cir. 2005).

*B. Claim II*

In Claim II, McKinnon alleges the circuit court was biased against him and abused its discretion when it ruled that he was not allowed to argue self-defense to the jury. McKinnon argues the ruling establishes the circuit court was biased against him and that his appellate counsel was ineffective for failing to argue on appeal that the circuit court was biased against him and abused its discretion. [Dkt. No. 1-1 at 5].

"Although a trial court cannot, of course, prohibit closing argument entirely, it can limit closing argument to 'ensure that argument does not ... impede the fair and orderly conduct of the trial,'" United States v. Crockett, 813 F.2d 1310, 1317 (4th Cir. 1987) (quoting Herring v. New

13

York, 422 U.S. 853, 862 (1975)), and "[c]losing argument is limited to the facts in evidence." United States v. Tejada, 445 F. App'x 719, 722 (4th Cir. 2011) (citing United States v. Lighty, 616 F.3d 321, 361 (4th Cir. 2010)); United States ex rel. Shaw v. De Robertis, 755 F.2d 1279, 1281 (7th Cir. 1985) (attorney's argument "violated the fundamental rule, known to every lawyer, that argument is limited to the facts in evidence."). In addition, a trial "court is afforded broad discretion in controlling closing arguments and is only to be reversed when there is a clear abuse of its discretion." United States v. Wills, 346 F.3d 476, 491-92 (4th Cir. 2003) (citation omitted); see, e.g., United States v. Pratt, 239 F.3d 640, 645 (4th Cir. 2001) (trial court did not err in sustaining government's objection to defense counsel's closing argument that the stop of the defendant was based on race or any other impermissible consideration because the facts in evidence or reasonable inferences drawn therefrom provided no basis for the argument).

"'[A] defendant is entitled to an instruction as to any recognized defense *for which there exists evidence sufficient for a reasonable jury to find in his favor*.'" Mathews v. United States, 485 U.S. 58, 63-64 (1988) (emphasis added). Here the trial court found that the facts and evidence did not support an instruction on self-defense. (9/25/19 Tr. at 192-96).

Virginia recognizes two forms of self-defense:

self-defense without fault ("justifiable self-defense") and self-defense with fault ("excusable self-defense"). "Justifiable homicide in self-defense occurs where a person, without any fault on his part in provoking or bringing on the difficulty, kills another under reasonable apprehension of death or great bodily harm to himself." Bailey v. Commonwealth, 200 Va. 92, 96, 104 S.E.2d 28, 31 (1958). On the other hand,

> [e]xcusable homicide in self-defense occurs where the accused, although in some fault in the first instance in provoking or bringing on the difficulty, when attacked retreats as far as possible, announces his desire for peace and kills his adversary from a reasonably apparent necessity to preserve his own life or save himself from great bodily harm.

Id.

14

Bell v. Commonwealth, 788 S.E.2d 272, 275 (Ct. App. Va. 2016). Accordingly, the trial court instructed McKinnon, who was proceeding *pro se*, that he could "not use the words 'self-defense'" in his closing argument. (9/25/19 Tr. at 194).

On appeal, the Court of Appeals of Virginia held that the trial court did not err in refusing "to instruct the jury on excusable homicide or self-defense" because the evidence, viewed in the light most favorable to McKinnon, established that McKinnon "provoked the confrontation and did not retreat or announce his desire for peace before shooting" the victim. (CAV R. at 46-47).

> The record in the case lacks any evidence supporting either a justifiable or excusable self-defense jury instruction. Appellant produced a firearm and tried to strike Reed's face with it because Reed declined appellant's request "to hit" Reed's "blunt." Reed caught appellant's wrist to protect himself, and the men then began to "struggle." Thus, appellant was, at a minimum, "slightly at fault" in provoking the confrontation with Reed and had a duty to retreat. See Smith v. Commonwealth, 17 Va. App. 68,71 (1993) (holding that the defendant's self-defense was excused, not justified, when the defendant "provoked" the confrontation by "taking [the victims'] cocaine"). The record, however, contains no evidence that appellant retreated or announced his "desire for peace." Bell, 66 Va. App. at 487. Rather, he shot Reed twice "during the struggle" before fleeing. See Jones v. Commonwealth, 71 Va. App. 70, 95 (2019) (holding that the...defendant was not entitled to an excusable self-defense jury instruction when he shot the victim, without retreating, after seeing the victim "reaching toward [his] waistband").

(CAV R. at 46). The denial of the self-defense instruction was in accordance with Virginia law, and the trial court's ruling that there was no evidence to support the instruction was upheld. Hence, the ruling that McKinnon could not argue self-defense in his closing argument was correct and not evidence of either bias or an abuse of discretion.

The claim that appellate counsel is alleged to be ineffective for not pursuing this alleged error on appeal is not based upon error because none occurred. The trial court did not abuse its discretion in limiting petitioner's argument to the facts in evidence. Counsel was not ineffective for failing to raise a meritless issue. See Moody, 408 F.3d at 151.

*C. Claim III*

In Claim III, McKinnon alleges his standby counsel was ineffective for not bringing the CD containing video from the officer's "body-worn camera" to the jail for him to review.

"[A]s a *pro se* defendant, [the defendant] had no constitutional right to standby counsel. '[W]ithout a constitutional right to standby counsel, a defendant is not entitled to relief for the ineffectiveness of standby counsel.'" United States v. Oliver, 630 F.3d 397, 413-414 (5th Cir. 2011) (quoting United States v. Morrison, 153 F.3d 34, 55 (5th Cir. 1998); citations omitted).

> Without a constitutional right to standby counsel, a defendant generally cannot prove standby counsel was ineffective. United States v. Cochrane, 985 F.2d 1027, 1029 n. 1 (9th Cir.1993) (rejecting ineffective assistance of standby counsel argument in this context without foreclosing argument in future); United States v. Windsor, 981 F.2d 943, 947 (7th Cir.1992) ("court knows of no constitutional right to effective assistance of standby counsel"); United States v. Morrison, 153 F.3d 34, 55 (2d Cir.1998) ("without a constitutional right to standby counsel, a defendant is not entitled to relief for ineffectiveness of standby counsel"). Accordingly, Petitioner's claim that [counsel] failed to provide effective assistance of counsel in his subsequent role of standby counsel fails as a matter of law.

Evans v. United States, Nos. 4:12cr575-RBH-1; 4:16cv3359-RBH, 2018 U.S. Dist. LEXIS 83268, *16 (D.S.C. May 17, 2018), appeal dismissed, 740 F. App'x 358, 358 (4th Cir. 2018); Lee v. Hines, 125 F. App'x 215, 217 (10th Cir. 2004) ("A defendant who chooses to represent himself and has the assistance of court appointed standby counsel cannot succeed in establishing ineffective assistance against such counsel when it is clear that the defendant maintained control of his defense.") (citations omitted); Thrower v. United States, Nos. 1:03cr341, 1:05cv553,  2005 U.S. Dist. LEXIS 12078, *26-27 (N.D. Ohio June 16, 2005) ("Since Petitioner chose to proceed *pro se* at trial, Petitioner has no right to allege claims of ineffective assistance of standby

counsel.").[5] Accordingly, Claim III has no merit and will be dismissed.[6]

     *D. Claim IV, Double Jeopardy*

     In Claim IV, McKinnon alleges his double jeopardy rights were violated when he pleaded guilty to the indictment charging him with possession of ammunition after having been convicted of a felony because he had been charged with two violations of Virginia Code § 18.2-308.2(A). [Dkt. No. 1-1 at 9-10]. Thereafter, he alleges that his appellate counsel was ineffective for not raising the issue on appeal.

     McKinnon was charged with two counts of violating § 18.2-308.2(A). The first indictment (Case No. 19-84), was returned by the grand jury on January 2, 2019 and charged McKinnon with possession of ammunition after having been convicted of a felony on August 31, 2018. He was also indicted for violating § 18.2-308.2(A) on January 30, 2019, possessing of a firearm after having been convicted of a felony (Case No. 19-308). The indictment in Case No. 19-84 was terminated by the entry of a *nolle prosequi* on September 24, 2019 at the beginning of

---

[5] The trial record establishes that petitioner stated to the trial judge at the beginning of trial that he was ready for trial, that his witnesses were present, and that he 'did not "need any more time to get ready for trial." (9/24/19 Tr. at 41). In a proceeding on June 7, 2019, over three months before trial, the circuit court, the prosecutor, the petitioner and standby counsel discussed a "body camera video, " and it was agreed that a CD would be made and that standby counsel would take it to the jail for petitioner to review. (6/7/19 Tr. at 5). An order was entered regarding the matter on June 18, 2019. Petitioner did not raise the issue in any subsequent motions with the circuit court, at any of his other appearances be fore the court, at the beginning of his trial when he responded that he was ready for trial and did not need any further time to prepare, or at his sentencing. At his sentencing, petitioner raised numerous objections, but did not object to anything regarding the video. (11/22/19 Tr. at 6-10).

[6] Even if Strickland were applicable, petitioner has not established prejudice under the second prong of Strickland because he has not proffered the contents of the video. See Beaver v. Thompson, 93 F.3d 1186, 1195 (4th Cir. 1996) ("an allegation of inadequate investigation does not warrant habeas relief absent a proffer of what favorable evidence or testimony would have been produced.") (citing Bassette, 915 F.2d 40-41 (requiring proffer of mitigating evidence to state claim of ineffective assistance; see also United States v. Ashimi, 932 F.2d 643, 650 (7th Cir. 1991) (a defendant who faults counsel for not calling a witness cannot simply state the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance of counsel claim). "[W]ithout a specific, affirmative showing of what the missing evidence or testimony would have been, 'a habeas court cannot even begin to apply Strickland's standards because it is very difficult to assess whether counsel's performance was deficient, and nearly impossible to determine whether the petitioner was prejudiced by any deficiency in counsel's performance.'" Anderson v. Collins, 18 F.3d 1208, 1221 (5th Cir. 1994) (quoting United States ex rel. Partee v. Lane, 926 F.2d 694, 701 (7th Cir. 1991)).

McKinnon's trial. The dismissal occurred before the jury was selected or any witnesses were sworn.[7] (9/24/19 Tr. at 4, 15, 27).[8] In short, jeopardy never attached to Case No. 19-84, and his assertion of double jeopardy has no merit. See Crist v. Bretz, 437 U.S. 28, 36 (1978) ("jeopardy attaches when the jury is empaneled and sworn"); Fransaw v. Lynaugh, 810 F.2d 518, 523 (5th Cir. 1987) ("no question of double jeopardy arises unless jeopardy has first attached sometime prior to what the defendant seeks to characterize as the 'second' prosecution").

The firearm charge, Case No. 19-308, was severed[9] from the malicious wounding and use of a firearm charges, and McKinnon pleaded guilty to an amended indictment of possession of ammunition after having been convicted of a felony on February 5, 2020. In short, the record conclusively establishes that McKinnon was not convicted of two violations of § 18.2-308.2(A).

The record establishes there was no double jeopardy violation and appellate counsel, therefore was not ineffective for failing to raise a meritless issue. See Moody, 408 F.3d at 151.

### E. Claim V, Self-Defense Instruction

In Claim V, McKinnon asserts the trial court erred by not instructing the jury on self-

---

[7] See Cantrell v. Commonwealth, 373 S.E.2d 328, 334 (Ct. App. Va. 1988) (holding that a *nolle prosequi* entered before jeopardy attaches neither functions as an acquittal nor bars further prosecution on the same charge). In Virginia, a defendant has the ability to sever a charge of possession of a firearm/ammunition by a person previously convicted of a felony, which the Supreme Court has found precludes an assertion the second prosecution violated a defendant's double jeopardy rights. See Currier v. Virginia, 138 S. Ct. 2144, 2148-50 (2018) (holding that criminal defendant who chooses severance of charges cannot successfully argue that prosecution on second charge offends Double Jeopardy Clause).

[8] The Virginia Judicial Systems' Case Status and Information page reflects that the possession of ammunition indictment was *nolle prossed* on September 19, 2019, Commonwealth v. McKinnon, Case No, CR19000084-00. See https://www.vacourts.gov/main.htm (click on Circuit Court, select Newport News Circuit Court, and search "McKinnon, John") (last viewed Apr. 29, 2022). See Colonial Penn Ins. Co. v. Coil, 887 F.2d 1236, 1239 (4th Cir. 1989) ("most frequent use of judicial notice of ascertainable facts is in noticing the content of court records.") (collecting cases); see, e.g., Lynch v. Leis, 382 F.3d 642, 647 & n.5 (6th Cir. 2004) (taking judicial notice of state court records available to public online).

[9] In Virginia, "unless the Commonwealth and defendant agree to joinder, a trial court must sever a charge of possession of a firearm by a convicted felon from other charges that do not require proof of a prior conviction." Hackney v. Commonwealth, 504 S.E.2d 385, 389 (Ct. App. Va. 1998) (en banc). The United States Supreme Court found this procedure

defense. Here, McKinnon did not testify at trial, and the only evidence as to what occurred on the porch when the victim was shot came from the victim and other prosecution witnesses. As noted herein, see, supra at 14-15, the evidence did not support an instruction on self-defense under Virginia law. See Nickerson v. Lee, 971 F.2d 1125, 1137 (4th Cir. 1992) ("Ordinarily, 'instructions to the jury in state trials are matters of state law and procedure not involving federal constitutional issues,' Grundler v. North Carolina, 283 F.2d 798, 802 (4th Cir. 1960), and are therefore not reviewable in a federal habeas proceeding.").

> "'As a general rule, errors in jury instructions in a state criminal trial are not reviewable in federal habeas corpus proceedings, unless they are so fundamentally unfair as to deprive petitioner of a fair trial and to due process of law.'" Tyler v. Nelson, 163 F.3d 1222, 1227 (10th Cir. 1999) (quoting Nguyen v. Reynolds, 131 F.3d 1340, 1357 (10th Cir. 1997)). "Thus, the burden on a petitioner attacking a state court judgment based on a refusal to give a requested jury instruction is especially great because 'an omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law.'" Id. (quoting Maes v. Thomas, 46 F.3d 979, 984 (10th Cir. 1995)).

Lujan v. Norwood, 62 Fed. Appx. 304, 306 (10th Cir. 2003); see Lannert v. Jones, 321 F.3d 747, 754 (8th Cir. 2003) (denying habeas relief on a claim his due process rights were violated because, under state law, the petitioner was not entitled to a self-defense instruction because the evidence did not satisfy "the requirements of the applicable law on self-defense"); Taylor v. Withrow, 288 F.3d 846, 851-54 (6th Cir. 2002) (no due process violation in failure to instruct a jury on self-defense because under state law there was no evidence to support a self-defense instruction); see, e.g., Jones v. Hunt, No. 5:09-HC-2001-D, 2010 U.S. Dist. LEXIS 85174, *19 (E.D. NC Aug. 19, 2010) ( "no constitutional right was violated at trial or on direct appeal" because "the facts … did not warrant the instruction") (citing Withrow, 288 F.3d at 852-54); see also Delo v. Lashley, 507 U.S. 272, 275 (1993) ("we never have suggested that the Constitution requires a state trial court to instruct the jury on mitigating circumstances *in the absence of any supporting evidence*.") (emphasis added). Claim V will be dismissed.

****

Petitioner has filed two requests for the entry of a default judgment. [Dkt. Nos. 21, 22]. The motions are nearly identical and each asserts that the respondent did not file a timely response as required by this Court's January 14, 2022 Order. [Dkt. No. 12]. The motions have no merit. On February 11, 2022, the respondent sought and was granted an extension of time to file a response on or before February 28, 2022. [Dkt. Nos. 21 and 22]. The response was timely filed on February 28, 2022. [Dkt. No. 18].

## IV. Conclusion

For the foregoing reasons, the motion to dismiss the petition [Dkt. No. 18] must be granted and the petition must be dismissed with prejudice, and that petitioner's motions for entry of default judgment [Dkt. Nos. 21 and 22] are denied. An appropriate Order shall issue.[10] Entered this 18th day of May 2022.

Alexandria, Virginia

_____
Anthony J. Trenga
United States District Judge

---

[10] An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n. 4 (1983)). Petitioner fails to meet this standard.